13-6210.141                                                February 12, 2014

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

THE COREY STEEL COMPANY,        )
                                )
        Plaintiff,              )
                                )
        v.                      )   No. 13 C 6210
                                )
SA INDUSTRIES 2, INC.,          )
                                )
        Defendant.              )

## MEMORANDUM OPINION

This opinion addresses a fee petition filed by plaintiff's attorneys, David G. Jorgensen and Stephen C. Carlson of the firm of Sidley Austin LLP.

The attorneys filed a two-count diversity complaint on August 30, 2013. It consisted of six and one-half pages of text and three exhibits.[1] The gist of the action is that, pursuant to the written contract attached as an exhibit to the complaint, the plaintiff sold and delivered steel products to the defendant in a series of shipments between August 28, 2012 and October 29, 2012. Payment for each shipment was due thirty days after delivery. The

---

[1] Two of the exhibits are copies of one-page letters written by the plaintiff or its attorneys demanding payment from the defendant. The third exhibit is a copy of the one page "Customer Credit Application" alleged to be the contract between the parties. The "Application" provides that each shipment will be accompanied by an invoice that would be considered a separate contract pursuant to the Application. The unusual structure of the contract has nothing to do with the fee petition.

defendant made some payments, but, as of July 26, 2013, $79,302.92 was overdue.

The contract provides that plaintiff will be entitled to attorneys' fees and interest in the event a collection action is needed.

Count I of the complaint is a straight breach of contract claim and is so labeled. It alleges that "valid and enforceable contracts were formed between Corey Steel and Defendant on each of the dates listed above." (Compl. ¶ 22.)

Count II is a curiosity. It is labeled "Quantum Meruit *(in the alternative to Breach of Contract)*". It alleges that it would be unjust "for Defendant to retain the goods without compensating Corey Steel." (Id. ¶ 30.) The plaintiff is alleged to be entitled to the fair market value of the goods, and "[t]he fair market value is best identified by the price two parties bargained for at arms length; such prices are listed in the invoices. The fair market value of the goods is $79,302.92." (Id. ¶ 31.) Count II concludes by relying on the contract language providing for attorneys' fees and interest in the event a collection action is needed, and states that "[i]n the alternative to breach of contract, Corey Steel seeks recovery in quantum meruit for its services provided to Defendant, as well as attorneys' fees, interest and costs." (Id. ¶¶ 32, 33.)

There is nothing wrong with pleading quantum meruit in the alternative to breach of contract when for some reason the contract claim might fail and it would be unjust to allow the defendant to retain the benefit of the transaction without paying the value of it. But here there is no suggestion of any reason the contract action might fail and there would be a need to resort to quantum meruit.

Moreover, far from being a quantum meruit claim for the value received by the defendant, Count II simply realleges the contract claim, seeking to recover the contract price, which would include plaintiff's profit. It also involves the contract language in claiming attorney's fees. (Id. ¶ 33.) There would be no entitlement to attorney's fees in quantum meruit, because plaintiff's fees would not be a benefit to the defendant.

Count II is simply makeweight.

## DISCUSSION OF THE FEE PETITION

Although properly served at its office in Michigan, the defendant has not appeared or pleaded to the complaint. On September 30, 2013, plaintiff's attorneys filed a motion for entry of default judgment. A $7,251.59 payment had been received from the defendant on September 4, 2013, reducing the claim, with interest, to $77,910.94. The motion was later supported by the affidavit of Mr. Jorgensen stating that "Sidley Austin LLP has billed or will bill Corey Steel a total sum of $32,789.48

($31,017.77 in legal fees and $1,771.71 in expenses) for its services rendered in connection with seeking collection of the debt owed by Defendant to Corey Steel." (Jorgensen Aff. ¶ 5.) In explanation, the affidavit stated:

> I have drafted a complaint, drafted various affidavits, attended court hearings, engaged in ultimately unsuccessful settlement negotiations with opposing counsel, conducted legal research and discussed case strategy with multiple attorneys at my firm.

(Id. ¶ 4.)

The motion for the default judgment was presented by Mr. Jorgensen in open court on October 9, 2013. We discussed his motion. He informed us that the parties were attempting to resolve the dispute. The motion for default judgment was continued for hearing to December 4, 2013.

On December 3, 2013, Mr. Jorgensen filed his affidavit. On December 4, 2013, Mr. Jorgensen appeared again, and we discussed his motion. We were struck by the fact that the fees requested comprise such a large percentage of the amount claimed in this apparently simple case as well as by the paucity of specific information about the work that the attorneys had done.[2] We asked Mr. Jorgensen to provide a supplemental affidavit describing the work done, the hours spent on it, the requested hourly rates of the attorneys involved and a breakdown of the expenses.

---

[2] Although the contract provides for reimbursement of "any and all collection/attorney fees," reasonableness is implied as a matter of law. Kaiser v. MEPC Am. Props., 518 N.E.2d 424, 427 (Ill. App. Ct. 1987).

On December 10, 2013, the "Second Affidavit of David G. Jorgensen" was filed. Mr. Jorgensen states in the affidavit that Sidley Austin LLP "has billed or will bill Corey Steel a total sum of $33,104.61 ($32,029.90 in legal fees and $1,074.71 in expenses) for its services," of which $24,095.38 has been paid. (Second Jorgensen Aff. ¶¶ 4-5.)

Attached to the affidavit are copies of the bills sent to Corey Steel from July through November 2013. In addition to the copies of the bills there are, for each month, "time summaries" showing the hours billed by each attorney, the attorney's hourly rate and the dollar amount billed by the attorneys for that month.

Mr. Carlson billed a total of 18.75 hours from July through November 2013 at an hourly rate of $765.00 for a total billing of $14,343.75.

Mr. Jorgensen charged a total of 43.5 hours at a rate of $333.00, for a total billing of $14,485.50.

The work described in the bills to the clients is almost entirely lacking in the specific details we requested of Mr. Jorgensen on December 4. Mr. Carlson's time entry for August 27, 2013, is an example – he claims two hours' time (which comes to $1,530.00) for the following:

> Review litigation hold; review complaint; edit litigation
> hold; edit complaint; office conferences with D.
> Jorgensen; emails to and from D. Jorgensen; emails
> regarding e-discovery; memo to D. Jorgensen regarding e-
> discovery.

(Second Jorgensen Aff., Ex. B, at 1.)  A "litigation hold" notice is simply a notice to a party in prospective or existing litigation to preserve materials, such as e-mails, that would be material to the litigation.  It should not have taken very long to draft an appropriate notice in regard to this case.  We can't tell how much time Mr. Carlson spent on it, or what his "review" or "editing" consisted of.  Neither can we tell what the office conferences with Mr. Jorgensen were about, and "emails to and from D. Jorgensen" is similarly uninformative.  E-mails to Mr. Jorgensen, and the purpose of a memorandum to him, "regarding e-discovery" on August 27 is unclear in view of the then-apparent likelihood of a default by the defendant.  The same can be said for Mr. Carlson's hour spent the following day, August 28, on the following:

> Emails to and from D. Jorgensen; review & re-review complaint; research re: e-discovery; edit complaint

(Second Jorgensen Aff., Ex. B, at 1.)

Examining the bills from July to the end of November, we count at least 31 e-mails that Mr. Carlson sent, mostly to Mr. Jorgensen.  There is usually no indication of the specific content of the e-mails, so we have no way of determining whether any of them were necessary or useful.  The time charged is substantial, because for each e-mail sent by Mr. Carlson to Mr. Jorgensen, Mr. Jorgensen charges time for reading it, as the invoices show.

The time spent drafting, reviewing and revising the complaint is difficult to believe. Consider the following charges by Mr. Jorgensen for August 26-28, 2013:

| | | | |
|---|---|---|---|
| 08/26/13 | DG Jorgensen | Email with J. DeLette;[3] research breach of contract, quantum merit, complaint requirements and ESI; draft, review and revise complaint | 5.50 |
| 08/27/13 | DG Jorgensen | Research, draft, review and revise litigation hold letter; calls with S. Carlson regarding litigation hold letter; call with J. DeLette regarding litigation hold letter; review and revise complaint. | 4.25 |
| 08/28/13 | DG Jorgensen | Email correspondence with S. Carlson regarding e-discovery and complaint; email correspondence with J. DeLette; review and revise complaint | 3.25 |

(Id.) This is a total of 13 hours at $333.00 per hour, which comes to $4,329.00. The time is not broken down, so we do not know how much time was spent on each of the listed tasks. How much time did Mr. Jorgensen spend researching quantum meruit? How much time could possibly have been productively spent further reviewing and revising the simple complaint? What legal research was needed regarding breach of contract? What more was needed on the "litigation hold?"

We are not persuaded that any of the 13 hours billed by Mr. Jorgensen on August 26, 2013 was necessary or productive. On page two of Mr. Jorgensen's Second Affidavit, paragraph 8, he offers the following explanation:

> 8. The correspondence between Stephen Carlson ("Carlson") and myself on August 27, 2013 related to the litigation hold letter and complaint that I drafted. We

---

[3] Mr. DeLette is a credit analyst employed by the plaintiff.

> concluded that the breadth of the litigation hold letter was appropriate given the nature of the case, and Carlson provided me with suggestions on the complaint. Carlson also informed me of our e-discovery obligations generally, and suggested ways to research our specific obligations.

The explanation simply reinforces our view that Messrs. Carlson and Jorgensen billed their client for a substantial amount of excessive time. Other examples are at paragraphs 10, 12 and 13 on page two of the Second Affidavit:

> 10. On September 9, 2013, I spoke with my client and Carlson to determine whether it was appropriate to accept opposing counsel's request to delay entering judgment against Defendant. After speaking with two bankruptcy experts at my firm – Matthew Martinez and Michael Gustafson – who advised me that bankruptcy of the Defendant during such a delay would not materially impair my client's ability to collect, we decided that the benefits of delaying the entry of judgment outweighed the possible costs.
>
> \* \* \* \*
>
> 12. On October 2, 2013, Carlson and I met to discuss service of process. We concluded that the summons and complaint were effectively served on Defendant at the beginning of the case.
>
> 13. On October 21, 2013, Carlson and I discussed opposing counsel's promise that Stan Aldridge, the owner of Defendant, will personally guarantee Defendant's debt to Corey Steel. We determined that while such a promise was given, our best course of action was to pursue collection from Defendant before purs[u]ing collection from Stan Aldridge personally.

If there was anything about these matters discussed on September 9 or October 21 that was not self-evident, we do not see it. As far as the discussion about service of process on October 2, 2013, Mr.

Jorgensen gives no indication that there was any problem regarding service.[4]

* * * *

This case could have been handled by a first-year associate with an hour or so of oversight by a more experienced attorney. Ten hours' time would have been more than sufficient to confer with the client concerning the debt, negotiate with the debtor to determine whether a lawsuit would be necessary, draft a litigation hold letter, draft a simple one-count breach of contract complaint, supervise service of process and prepare a motion for default judgment when the defendant failed to appear.

It would also have been appropriate for Mr. Jorgensen to do all of the work himself and to charge his $333.00 hourly rate for it. Mr. Carlson's rate of $765.00 is patently inappropriate for the simple tasks involved. Moreover, it was not necessary for two attorneys to be spending time on the case. Messrs. Carlson and Jorgensen not only individually spent time that was unnecessary, they duplicated each other's unnecessary time. Their combined time comes to 62.25 hours (18.75 for Carlson and 43.5 for Jorgensen). An honest and diligent attorney does well to find eight genuinely billable hours in a day, regardless of how many hours he or she may spend at the office. The total of 62.25 hours claimed by Messrs.

---

[4]  See Exhibit 1 to Plaintiff's Motion for Default Judgment, at 2 (return of special process server showing personal service on defendant's agent at defendant's corporate headquarters).

Carlson and Jorgensen, at 8 chargeable hours a day, would represent about 7.8 lawyer-days. To suggest that the necessary work in this case would have taken a diligent lawyer almost eight days to perform is absurd.

### **Conclusion**

We find that the maximum amount of time that was necessary for plaintiff's attorneys to spend on this case to date was twelve hours. The appropriate hourly rate for the work is $333.00. We will therefore award plaintiff its attorneys' fees in the amount of $4,000.00.

Plaintiff also seeks costs in the amount of $1,074.71. This amount includes $474.61 in Westlaw research costs. However, the attorneys have not indicated what research was done, and we have no basis for finding that it was necessary. Accordingly, we deduct $474.61 from the requested costs, and award costs in the amount of $600.10.

We will enter a default judgment granting plaintiff $77,910.94 in principal and interest owing as of September 30, 2013, together with attorneys' fees in the amount of $4,000.00 and costs in the amount of $600.10.

```
DATE:      February 12, 2014


ENTER:     _____
           John F. Grady, United States District Judge
```